In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-4219

NAPOLEON L. KEYS,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 7334—**Arlander Keys**, *Magistrate Judge.*

ARGUED JUNE 11, 2003—DECIDED OCTOBER 29, 2003

Before POSNER, COFFEY, and RIPPLE, *Circuit Judges.*

POSNER, *Circuit Judge.* Social security disability benefits are designed for disabled workers, but low-income parents (or, as in this case, a guardian) may obtain them on behalf of their disabled children as well. 42 U.S.C. § 1382c(a)(3)(C); see *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 80-85 (2d Cir. 2003); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 487-90 (E.D.N.Y. 2003). This extension of the normal program for disabled

adults can be defended as a realistic recognition that having a disabled child will often limit the amount of productive work that the parents can do and that the limitation is a particular hardship to families that have limited financial means. But this defense of disability benefits for the disabled children of the poor is at best conjectural. Richard P. Weishaupt & Robert E. Rains, "*Sullivan v. Zebley*: New Disability Standards for Indigent Children to Obtain Government Benefits," 35 *St. Louis U. L.J.* 539, 545-46 (1991), noting the "virtual silence" concerning Congress's motivation for extending disability benefits to children, points out that this silence, "coupled with the lack of a social welfare tradition regarding income maintenance for disabled children, made development of an appropriate standard a difficult task." (On the agency's struggles to come up with such a standard, see *Sullivan v. Zebley, supra*, 493 U.S. at 539-41.) About all that is clear is that since disabled children generally do not have a work history, the structure of the disability program for them is necessarily different from that for adults, *Encarnacion ex rel. George v. Barnhart, supra*, 331 F.3d at 82-83, except in cases in which the child has a "listed impairment," that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to perform his past work or some other work; the child is treated the same in such a case. 20 C.F.R. § 416.924(d). But if he is not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether he is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication.

After the administrative law judge to whom the application for disability benefits on behalf of Napoleon Keys, then 14 years old, had been referred held that he was not disabled within the meaning of the applicable regulations, which were merely interim regulations, the Social Security

Administration adopted final regulations in implementation of changes in the definition of childhood disability made by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law 104-193, §§ 211-212. These are different from the interim regulations and the initial question presented by the appeal is whether Keys's case is governed by the old (interim) or the new (final) regulations. No appellate case has attempted to resolve the issue.

The statement accompanying the issuance of the new regulations says that the regulations applicable to a particular case are those that were "in effect at the time of the final decision." 65 Fed. Reg. 54751 (Sept. 11, 2000). When the new regulations took effect at the beginning of 2001, Keys's appeal from the administrative law judge's adverse decision was pending before the Appeals Council of the Social Security Administration. The Council has discretion whether to hear an appeal from an administrative law judge's decision. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997); *Eads v. Secretary of HHS*, 983 F.2d 815, 816 (7th Cir. 1993); see also *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). It is like the discretion conferred by the certiorari jurisdiction of the Supreme Court, but unlike the Court the Appeals Council gives reasons when it denies review. In Keys's case, the Council "concluded that there is no basis . . . for granting your request for review. Accordingly, your request is denied and the Administrative Law Judge's decision stands as the final decision of the Commissioner of Social Security in your case. In reaching this conclusion, the Appeals Council has . . . considered the final regulations . . . implementing the childhood disability provisions. . . . The new regulations do not provide a basis to change the Administrative Law Judge's decision."

The government argues that the "final decision" was that of the administrative law judge, and hence the old regula-

tions apply since the new ones had not taken effect until after his decision. We understand everything but "hence." The Appeals Council considered the new regulations—it had to, since obviously the administrative law judge's decision had not become final while the case was still before the Appeals Council. When the Council decided not to review the case, the administrative law judge's decision became final, but it became final then, not earlier, just as a decision becomes final when the Supreme Court denies certiorari. *Clay v. United States*, 537 U.S. 522 (2003). It would be very odd if the Social Security Administration wanted the Appeals Council to consider the applicability of the new regulations but the court of appeals to consider only the applicability of the old ones. We have held, it is true, taking one side of a circuit split, see *Mills v. Apfel, supra*, 244 F.3d at 4 and n. 2, that the court may not consider evidence first presented to the Appeals Council in deciding whether the administrative law judge made an error of fact, because he cannot err by failing to have considered evidence never tendered to him. *Eads v. Secretary of HHS, supra*, 983 F.2d at 817. But we made clear in that case, *id.*, as did the First Circuit in *Mills*, 244 F.3d at 5, that we can review an errone-ous refusal by the Council to take account of new evidence submitted to it, because that is a legal error. And similarly we can review an erroneous application of regulations by the Council. See *Perkins v. Chater, supra*, 107 F.3d at 1294.

The government argues that, if so, the Social Security Administration "would be reluctant to amend and approve on its own regulations if, every time it did so, it would be required to re-adjudicate cases that were properly decided under valid regulations." But it was the agency itself that decided that the applicable regulations would be those in effect when the final decision was rendered; it could if it wanted have limited the applicability of the new regula-tions to applications for benefits filed, or cases decided by

administrative law judges, after the new regulations took effect. Giving administrative regulations prospective effect only is more common than otherwise, but the agency declined to limit the effect of its new regulations in this way.

The government's interpretation of the scope of our review is not saved by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), because it is found only in a brief, and briefs, it seems, get limited deference. *United States v. Mead Corp.*, 533 U.S. 218, 228 n. 19 (2001); *Matz v. Household Int'l Tax Reduction Investment Plan*, 265 F.3d 572, 574-75 (7th Cir. 2001); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 563 (7th Cir. 1999); *Rosales-Garcia v. Holland*, 322 F.3d 386, 403 n. 22 (6th Cir. 2003); see also *Christensen v. Harris County*, 529 U.S. 576, 586-88 (2000); cf. *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 304-05 (5th Cir. 2003). Our hedge ("it seems") is because *Auer v. Robbins*, 519 U.S. 452, 462 (1997), gave full *Chevron* deference to an agency's amicus curiae brief; yet in the *Christensen* case the Supreme Court stated flatly that "interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack of the force of law—do not warrant *Chevron*-style deference." 529 U.S. at 587. Briefs certainly don't have "the force of law." Yet *Christensen* did not purport to overrule *Auer*, but instead described it as a case in which the regulation that the agency was interpreting (in the amicus brief, though the Court in *Christensen* doesn't mention this) was ambiguous—but *Chevron* only requires deference to agency interpretations of regulations that are ambiguous; an agency cannot by regulation contradict a statute, but only supplement it.

Probably there is little left of *Auer*. The theory of *Chevron* is that Congress delegates to agencies the power to make

law to fill gaps in statutes. See, e.g., *United States v. Mead Corp., supra*, 533 U.S. at 226-27; *American Federation of Government Employees v. Rumsfeld*, 262 F.3d 649, 656 (7th Cir. 2001); *Paragon Health Network, Inc. v. Thompson*, 251 F.3d 1141, 1146-47 (7th Cir. 2001). It is odd to think of agencies as making law by means of statements made in briefs, since agency briefs, at least below the Supreme Court level, normally are not reviewed by the members of the agency itself; and it is odd to think of Congress delegating lawmaking power to unreviewed staff decisions. See David J. Barron & Elena Kagan, "Chevron's Nondelegation Doctrine," 2001 *Sup. Ct. Rev.* 201, 204; Robert A. Anthony, "Which Agency Interpretations Should Bind Citizens and the Courts?" 7 *Yale J. Reg.* 1, 60-61 (1990). In any event, we doubt that *Chevron* has any role to play in this case because the government's brief did not offer an interpretation of the agency's regulations. The new regulations are clear in requiring the Appeals Council to apply them and not the old ones. The dispute is over whether the finality of the administrative law judge's decision should be, as it were, backdated if the Appeals Council decides not to review his decision. There is no regulation on this question.

We conclude that the new regulations govern our review. They designate six "domains" of functioning: acquiring and using information; attending to and completing tasks; interacting with and relating to other people; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A claimant is to be found disabled if he has an "extreme" limitation in at least one of the domains, or "marked" limitations in at least two. 20 C.F.R. § 416.926a(d). "Marked" and "extreme" limitations in a given domain can be established by standardized test scores that are two or three standard deviations, respectively, below the mean—that is, either in the lowest 2.5 percent of the distribution or the lowest 1

percent—provided, however, that the scores are representative of day-to-day functioning. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive, therefore, and the bulk of 20 C.F.R. § 416.926a is devoted to "general descriptions of each domain" against which a claimant's functioning may be compared; and so when the dust settles, the agency retains substantial discretion, which we cannot say was abused here.

Although Napoleon Keys had a turbulent childhood (his parents, with whom he no longer lives, were drug addicts), has a low-average IQ, has done quite poorly in some of his classes, has a limited social life, and has definite problems with concentration, he functions poorly rather than being as it were off the chart. In the six domains of functioning, he is extremely deficient in none and markedly deficient only in one ("attending to and completing tasks," formerly "concentration, persistence, and pace"). In fact, he is able to function more or less adequately in school, so that if he were deemed disabled so would millions of other children be. The denial of benefits was therefore reasonable and must stand.

We are mindful that some cases, most recently *Booker-Sheldon v. Barnhart*, 2003 WL 21316516, at *5 (N.D. Ill. June 10, 2003), doubt the propriety of reviewing an administrative law judge's decision when it was based on the inapplicable old regulations. No doubt in many cases this would be improper. But the differences between the old and the new regulations are not great, see *Encarnacion ex rel. George v. Barnhart, supra*, 331 F.3d 78, 84 n. 4 (2d Cir. 2003)—the report accompanying the final regulations confirms that the purpose of the revision was "largely to clarify" the earlier categories and to "rename, and to some extent reorganize, the prior areas of functioning," 65 Fed. Reg. 54756 (Sept. 11, 2000)—and when it is plain, as it is in this case, that the

administrative law judge's factual determinations would compel a denial of benefits under the new regulations as well as under the old, the doctrine of harmless error, which is fully applicable to judicial review of administrative decisions, *Sahara Coal Co. v. Office of Workers Compensation Programs*, 946 F.2d 554, 558 (7th Cir. 1991); *Save Our Heritage, Inc. v. FAA*, 269 F.3d 49, 61-62 (1st Cir. 2001), would spare us from having to order a remand in any event.

More important, although technically judicial review is of the administrative law judge's decision when the Appeals Council denies review, realistically it is of the Appeals Council's denial when it gives a reason for its action that relates to the soundness of the denial of the application for benefits. Had the Council just said we're denying review because we're too busy, then the only decision for the courts to review would be that of the administrative law judge. But that was not the character of the Council's reason for denying review; its reason was that the new regulations would make no difference to the outcome. That was a reasonable substantive judgment to which we would defer even if we did not independently believe that the changes brought about by the new regulations do not help Keys.

AFFIRMED.

A true Copy:

        Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*