Norman SIMPSON, Plaintiff–Appellant,

v.

Jo Anne BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 03–2843.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 27, 2004.

Decided Feb. 13, 2004.

Dana W. Duncan, Schmidt, Grace & Duncan, Wisconsin Rapids, WI, for Plaintiff–Appellant.

Julie Bentz, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before KANNE, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Norman Simpson suffers from carpal tunnel and tenosynovitus (inflammation of the tendon sheath) and consequently has trouble grasping and lifting objects and can't use vibratory tools. Because of these physical restrictions, Simpson lost his job as a machine grinder and forklift operator, so he applied for Social Security Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). While awaiting a decision on his applications, Simpson worked as a security guard until he quit after his hours were reduced. His applications were denied, and an administrative law judge subsequently found Simpson not disabled because he retained the residual functional capacity to perform his previous work as a security guard. The appeals council denied review of the ALJ's decision, and Simpson appealed to the district court, which affirmed.

Simpson worked as an air grinder at Iroquois Foundry until he developed tingling, numbness, and swelling in both hands in June 1997. He took his complaints to the Monroe Clinic, where orthopedic surgeon Dr. Dean Schueller and neurologist Dr. James Maynard diagnosed him with moderate carpal tunnel and vibratory damage to both hands. A consult-

ing physician for Iroquois Foundry's worker's compensation company, orthopedic surgeon Dr. Anoo Patel, confirmed the Monroe Clinic diagnosis and determined that Simpson also had acute tenosynovitus, and that he suffered from "triggering of the middle and ring fingers of both hands with locking"–a symptom consistent with both carpal tunnel and tenosynovitus. All the doctors agreed that the damage to Simpson's wrists was caused by his work as a grinder, and that he should restrict himself to light duty (without the use of vibratory tools, such as an air grinder). At Dr. Schueller's direction, Simpson started physical therapy and began wearing wrist splints to alleviate pain.

Physical therapy and wrist splints didn't help much, so Dr. Schueller performed carpal tunnel and trigger release surgery on Simpson's right hand in November 1997. The procedure relieved some of his symptoms and Simpson returned to work– as a forklift driver–although he still had trigger release problems on both hands. In August 1998 orthopedic surgeon Dr. William Engber examined Simpson and determined that the trigger release problems on his right hand were completely resolved, and recommended the same procedure for his left hand. Dr. Schueller performed the surgery in October 1998, and Simpson returned to work as a forklift driver two weeks later but was laid off in December 1998 for unspecified reasons.

In January 1999 Dr. Patel examined Simpson again and determined that he no longer had trigger release problems, but his ailments would permanently limit him to light duty–he should lift no more than 15 pounds, drive a forklift for only four hours a day, avoid tight and frequent gripping, and not use vibratory tools or work jobs that require fine manipulation. Dr. Schueller saw Simpson a few days later and cleared him for work, but permanently restricted him from lifting more than 15 pounds and working jobs that required repetitive motion or the use of vibratory equipment.

Iroquois Foundry permanently discharged Simpson three weeks later after concluding that it could not accommodate his permanent work restrictions. Simpson was then unemployed until he found work in March 2000 as a security guard at Menards.

That same month Dr. Schueller assessed Simpson's ailments–and the extent to which his symptoms restricted him from working–in an "Arthritis Residual Functional Capacity Questionnaire" (ARFC). Dr. Schueller noted that Simpson continued to suffer from hand swelling, reduced grip and strength, and could occasionally lift 20 pounds but was significantly limited in doing repetitive reaching, handling, or fingering. But Dr. Schueller also noted that he could sit or stand for at least six hours, he would not need to take unscheduled breaks, and that any pain he continued to suffer would seldom interfere with his attention and concentration. Nevertheless, Dr. Schueller opined that Simpson would have "good days" and "bad days" and would likely miss work "about four times a month." Dr. Schueller did not elaborate on these responses.

Simpson saw Dr. Engber again in August 2001 and complained of lingering pain and continued trigger release problems on his left hand. But Dr. Engber couldn't find the source of the pain or any evidence of triggering, so he referred Simpson to a rehabilitative medicine specialist, Dr. Jerome Ebert, who likewise found no triggering or evidence of lingering carpal tunnel. Dr. Ebert noted that Simpson's hands were thickly calloused, evidence that he had recently "been doing some fairly heavy repetitive work with his hands." Dr. Ebert recommended that he wear a

splint on his thumb, but concluded–in part because Simpson was continuing to work with his hands–that Simpson should be able to tolerate work with the restrictions Dr. Schueller and Dr. Patel imposed after his second surgery.

Simpson applied for DIB on April 14, 1999, and for SSI (and again for DIB) on January 25, 2000. His applications were denied and Simpson requested an administrative hearing.

At the hearing Simpson complained of pain in his hands and wrists and new problems with his shoulders and back. Simpson said he could do some household tasks but had to take Tylenol when his hands tightened up, and he also had trouble grasping. He quit his job as a security guard, he said, when his hours were cut back and it was no longer worth it for him to pay for the gas to drive there.

After Simpson testified, the ALJ asked the VE three hypothetical questions based on Simpson's age, education, past work experience and current work restrictions. The first assumed that Simpson was limited to light work and precluded from repetitive handling or fine manipulation. The VE answered that such a person could work as a security guard (Simpson's past job), or as a delivery, taxi, or forklift driver. The VE agreed with the ALJ that such a person could also work as an usher or flagger. The second hypothetical allowed for gross manipulation no more than 40 percent of an eight-hour day and fine manipulation no more than 20 percent of an eight-hour day. The VE answered that such a person could perform all the previously noted jobs plus that of production inspector. The third hypothetical assumed all the same restrictions as the second, adding only the restriction that Simpson would have to miss work four days a month. To this the VE answered that

such a person would not be able to find work.

The ALJ applied the standard five-step inquiry, see 20 C.F.R. § 404.1520, to Simpson's claim and determined that he suffered from severe carpal tunnel syndrome and had not engaged in substantial gainful activity since December 1998. The ALJ found that Simpson's impairment did not meet or equal any impairment listed in 20 C.F.R Pt. 404, Subpt. P, App. 1, and that Simpson had the residual functional capacity to perform his past work as a security guard. Thus, the ALJ decided, Simpson was not disabled. In making this determination, the ALJ discounted Dr. Schueller's opinion in the ARFC that Simpson's ailments would require him to miss four days of work a month because it was inconsistent with Dr. Schueller's previous reports and the opinions of the other examining physicians. The ALJ also found that Simpson's allegations of disabling pain lacked credibility.

■ On appeal Simpson first argues that the ALJ erred in discounting Dr. Schueller's opinion in the ARFC that he would likely miss four days of work a month due to his ailments because the opinion of Dr. Schueller–his treating physician–was entitled to controlling weight. To be sure, a treating physician's opinion should be accorded controlling weight, but only if it is well supported by medical findings and is not inconsistent with substantial evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); 20 C.F.R. § 404.1527(d)(2). Here the ALJ decided not to accord "much weight" to Dr. Schueller's opinion on Simpson's probable absenteeism because it was inconsistent with "both Dr. Schueller's earlier statements and the opinions of other treating and examining physicians." While the ALJ did not specifically identify how Dr. Schueller's opinion is inconsistent

with the rest of his reports or with other medical reports in the record–and perhaps shirked his duty to "articulate some legitimate reason for his decision," *see Clifford v. Apfel,* 227 F.3d 863, 871 (7th Cir.2000)– such an error is harmless when, as here, the record lacks any medical evidence supporting the doctor's opinion and instead contains substantial evidence that conflicts with it. *See Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) ("So the administrative law judge's opinion is vulnerable. But that is nothing new. No principle of administrative law or common sense requires us to remand a case in quest of the perfect opinion unless there is reason to believe that remand might lead to a different result."). Our review of the ALJ's decision is, after all, deferential and limited to ensuring that the ALJ employed the correct legal standard and that his ultimate conclusions are supported by substantial evidence, *see Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir.2000), which is the case here.

All the other medical opinions Simpson submitted, including those by Dr. Schueller, support the ALJ's finding that Simpson was not disabled. Both Dr. Patel and Dr. Engber stated that Simpson could return to work despite the continuing weakness in his hands that will limit his ability to perform certain tasks. Dr. Schueller himself noted elsewhere in the ARFC that any pain Simpson continues to suffer would seldom interfere with his attention and concentration, that he could sit or stand for at least six hours, and that he would not need to take scheduled breaks. And Dr. Ebert thoroughly examined Simpson more than a year after Dr. Schueller completed the ARFC, and concluded that he should be able to work within the restrictions imposed after he finished healing from his second surgery. Such limited restrictions are generally inconsistent with a finding that a claimant

will be prone to disabling absenteeism, *see Anderson v. Barnhart,* 344 F.3d 809, 813 (8th Cir.2003); *cf. Dixon,* 270 F.3d at 1177, or suffer disabling pain, *Donahue v. Barnhart,* 279 F.3d 441, 444 (7th Cir.2002).

■ Simpson next argues that the ALJ's decision to discredit his testimony regarding disabling pain was "patently wrong." *See Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir.2000). Simpson contends that, in discrediting his subjective complaints of pain, the ALJ incorrectly relied on the fact that he wasn't taking prescription medications, and completely discounted the medical reports of Doctors Schueller, Patel, and Engber.

We see no error in the ALJ's analysis, however. The ALJ was free to infer that Simpson's pain was not severe because he was never prescribed pain medication and testified that he was able to control his pain symptoms by taking Tylenol. *See Donahue,* 279 F.3d at 444. As to the ALJ's consideration of the doctors' reports, the ALJ noted that although the reports showed that Simpson's "history of hand surgeries could cause some degree of pain," the reports also cleared him for "light work," and one report–that of Dr. Engber–concluded that Simpson had even been doing work with his hands that his work restrictions prohibited. Thus the objective medical evidence that the ALJ was required to consider at this stage actually undermined Simpson's credibility, as did Simpson's work as a security guard–additional evidence that the ALJ was entitled to rely on in discounting Simpson's credibility. *See* SSR 96–7p.

■ Simpson's final argument is that the ALJ erred by presenting the VE with a hypothetical that did not include Dr. Patel's opinion that he should not use vibrating tools or engage in tight or frequent gripping. Although it is true that none of the three hypothetical questions that the ALJ posed to the VE included Dr.

Patel's restriction–a restriction that the ALJ should have incorporated because it was supported by medical evidence, *see Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir.2002)–the ALJ's error was harmless because he ultimately found that Simpson's ability to perform his previous work as a security guard rendered him not disabled. This work–as Simpson described it at the hearing–did not involve the use of vibratory tools or tight or frequent gripping. *See Keys v. Barnhart,* 347 F.3d 990, 994–95 (7th Cir.2003) (applying harmless error standard to ALJ's decision).

The ALJ's decision to deny disability benefits was based on substantial evidence. Therefore, the decision of the district court is

AFFIRMED.