POSNER, Circuit Judge.
This suit challenges the denial of social security disability benefits to the plaintiffs daughter, 12-year-old Chila Sanchez. Although social security disability benefits are designed for disabled workers, low-income parents can obtain them on behalf of their disabled children. 42 U.S.C. § 1382c(a)(3)(C). The standard rationale for this curious-seeming extension of the benefits program for disabled adults is, as we explained in Keys v. Barnhart, 347 F.3d 990, 991 (7th Cir.2003), that having a disabled child may limit the amount of productive work that the parents can do, inflicting hardship on families of limited means. See also Encarnacion v. Barnhart, 331 F.3d 78, 91 (2d Cir.2003); H.R.Rep. No. 231, 92d Cong., 2d Sess. 147-48 (1972), reprinted in 1972 U.S.C.C.A.N. 4989, 5133-34; Marcia K. Meyers, Henry E. Brady & Eva Y. Seto, Expensive Children in Poor Families: The Intersection of Childhood Disabilities & Welfare 2, 69 (Pub. Policy Inst. of Cal.2000). But since disabled children generally do not have a work history, the structure of the disability program for them necessarily differs from that for adults, except in cases in which the child has a “listed impairment,” that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to work; the child is treated the same in such a case. Otherwise the question is whether the child is severely limited in functioning in specified areas of life activity such as concentration and communication, which correspond to activities that adults perform at work. Thus “a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working.” Sullivan v. Zebley, 493 U.S. 521, 529, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).
To refine the inquiry, we explained in Keys, the Social Security Administration has “designated six ‘domains’ of functioning: acquiring and using information; attending to and completing tasks; interacting with and relating to other people; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(l). A claimant is to be found disabled if he has an ‘extreme’ limitation in at least one of the domains, or ‘marked’ limitations in at least two. 20 C.F.R. § 416.926a(d). ‘Marked’ and ‘extreme’ limitations in a given domain can be established by standardized test scores that are two or three standard deviations, respectively, below the mean — that is, either in the lowest 2.5 percent of the distribution or the lowest one-half of 1 percent — provided, however, that the scores are representative of day-to-day functioning. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive, therefore, and the bulk of 20 C.F.R. § 416.926a is devoted to ‘general descriptions of each domain,’ against which a claimant’s functioning may be compared.” 347 F.3d at 994.
The plaintiff in our case argues that her daughter has asthma so severe as to constitute a “listed impairment.” But she challenges the administrative law judge’s contrary finding solely on the ground that he failed to explain it adequately. There is merit to the argument and ordinarily it would require a remand. But in administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency’s *1083 decision. Ahmed v. Ashcroft, 388 F.3d 247, 249 (7th Cir.2004); Keys v. Barnhart, supra, 347 F.3d at 994-95; Save Our Heritage, Inc. v. FAA, 269 F.3d 49, 61 (1st Cir.2001). This is such a case. Chila does have asthma, uses a bronehodilator occasionally, and occasionally takes cortisone. For her asthma to rise to the level of a listed impairment, however, there must be medical evidence either of “persistent low-grade wheezing between acute attacks” or of “the absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators.” 20 C.F.R. § 404, Subpt. P, App. 1,103.03C. There is no such evidence, as the district court noted and the Social Security Administration’s brief explains at length; the plaintiffs reply brief contests neither the district court’s finding nor SSA’s explanation. A listed impairment is designed to identify a disabling ailment; and if Chila is disabled it is because of psychological problems, not asthma. Asthma is physically disabling. But Chila attends school, including gym classes, and summer camp, and there is no indication that her asthma interferes with these activities. Apparently she has never used her inhaler in school.
A neuropsyehologist, however, diagnosed Chila, who was sexually abused as a small child, as suffering from attention-deficit disorder, anxiety, and “sensory defensiveness” — which means abnormal sensitivity to being touched. He based this diagnosis mainly on an interview and on her mother’s description of Chila’s behavior — a description that the administrative law judge thought exaggerated.
Neuropsychology is the branch of psychology that specializes in the study of the effect of the brain on psychological phenomena. See Stedman’s Medical Dictionary 1213 (27th ed. 2000); Raymond J. Gorsini & Alan J. Auerbach, Concise Encyclopedia of Psychology 606-07 (2d ed. 1996). The neuropsyehologist gave Chila tests of memory, intelligence, ability to plan and form concepts, ability to control impulses, and related capabilities. These are the sorts of test that neuropsycholo-gists specialize in giving. The psychologist whom the administrative law judge credited, though he has a Ph.D in clinical psychology, is not a neuropsyehologist and had he administered similar tests and interpreted the results differently from the neuropsyehologist the administrative law judge would have been skating on thin ice to credit his results over those of the specialist.
But that is not what the clinical psychologist did. He merely pointed out the obvious — that the tests administered by the neuropsyehologist had failed to reveal serious psychological problems. The neurop-sychologist’s reports stated that “formal testing does not reveal any significant patterns of neurocognitive dysfunction,” that Chila has no “straightforward” form of attention-deficit disorder, and that “she is not showing any difficulties with planning, problem solving, utilizing feedback, coping with interference effects, or responding to demands for flexibility.” Other parts of the reports indicate that Chila may have serious psychological problems after all, but the overall impression that the administrative law judge was entitled to form, with the aid of the clinical psychologist’s explanations, was merely that Chila is not a perfectly well adjusted child. And the neuropsychologist’s diagnosis of sensory defensiveness and the like was based in part on a description of Chila’s behavior by her mother that the administrative law judge was entitled to and did find to be exaggerated. It was the neuropsychologist who, in relying on the mother, was skating on thin ice.
The administrative law judge was also influenced, and properly so, by the fact *1084 that Chila’s own testimony, and more important her report cards and other reports of her school performance, depict a normal schoolgirl. She is sometimes difficult or aggressive in school, but that is hardly unusual, and indeed were it not for some of the psychological evidence one would think her rather average despite her unfortunate childhood experience. To be disabled as an adult is to be unable to work, and to be disabled as a child is to be unable to engage in activities, such as completing tasks and relating to other people, that if an adult could not engage in them would disable the adult from working. Those are the “domain” activities. Chila engages in all of them. See Sullivan v. Zebley, supra, 493 U.S. at 540, 110 S.Ct. 885.
Affirmed.