NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 29, 2008
Decided February 14, 2008

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-1652

| | |
|---|---|
| DONALD METZGER, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Eastern District of Wisconsin |
| *v.* | No. 04-C-1166 |
| MICHAEL J. ASTRUE, | |
| *Defendant-Appellee.* | Rudolph T. Randa, *Chief Judge.* |

**O R D E R**

Donald Metzger applied in 1998 for Disability Insurance Benefits under Title II of the Social Security Act, claiming he was disabled because of high blood pressure, heart failure, and diabetes.  After two hearings, the ALJ denied Metzger's claim, finding he could perform his past work.  The Appeals Council denied review of the ALJ's decision, and the district court concluded that the decision was supported by substantial evidence.  Metzger now argues that the ALJ made erroneous credibility findings and improperly weighed the evidence.  Because substantial evidence supports the ALJ's decision, we affirm the denial of benefits.

Metzger worked from 1975 to 1996 at Modern Building Materials, a company that sells concrete manhole covers.  He was a salesman and then vice president of sales, though when he left the company he performed "just sales."  Metzger worked 10-12 hour days, and his primary responsibilities were meeting with contractors

and reading and making blueprints.  In this job, he drove approximately 50,000 miles per year.

Metzger had a silent heart attack in November 1996, and in early 1997, tests indicated congestive heart failure, narrowing and obstruction of arteries, and poor exercise capacity, but his cardiologists found no angina and concluded that his condition was "controlled."  In July 1998 Metzger told his primary care physician, Dr. Kristine Young, that he could not work full time because his blood pressure medication fatigued him.  In August of that year, Dr. Young reported to the SSA that Metzger had heart disease, diabetes, and high blood pressure.  She marked "yes" in the space on the form indicating restrictions on his activity but did not state what the restrictions were.  During that summer Metzger again visited Dr. Young complaining of pain, headaches, and numbness.  An MRI revealed several spinal problems, and followup testing revealed cervical radiculopathy (commonly known as a "pinched nerve").  His neurologist reported that Metzger's higher cortical function appeared to be intact, and his motor function was fine.

In September 1998 and February 1999, a State of Wisconsin medical consultant reviewed Metzger's medical records and determined that he could lift twenty pounds occasionally and ten pounds frequently, that he could stand or walk at least two hours a day and sit fewer than six hours during an eight-hour work day.  The consultant, however, did not state the maximum time periods that Metzger could stand, walk, or sit each day.  The consultant also determined that Metzger had limitations on other postures including climbing, balancing, stooping, kneeling, crouching, and crawling.

In October 1998 Metzger reported to his neurosurgeon that he had been experiencing shooting pains in his right arm related to certain neck movements for nearly a year.  The neurosurgeon confirmed the diagnosis of right cervical radiculopathy and found minor numbness and tingling in his fingertips, no sensory loss, and normal muscle strength except mild right biceps weakness.  When Metzger returned later that month, Metzger stated he had improved significantly and he no longer experienced headaches after changing the time he took his medications.  A month later he reiterated that he had controlled his headaches.

In February 1999 Metzger met with Dr. Gurbax Saini at the Commissioner's request.  Metzger reported fatigue, headaches, and neck pain into both arms, rather than just his right arm, but did not relate any restrictions on daily activity.  Dr. Saini examined Metzger and noted that his abilities to grasp, finger, and manipulate with each hand were normal and that he had no memory deficits.  He diagnosed Metzger with coronary artery disease, hypertension, diabetes, hypercholesterolemia, obesity, and neck pain due to a cervical spine problem.  Later

that month, Metzger visited Dr. Saini as his treating physician, and at that time Dr. Saini noted that the diabetes and hypertension were controlled, and that he had prescribed medication to control Metzger's depression and anxiety. In contrast to Metzger's reports of persistent pain when examined for social security purposes, followup visits between then and January 2002 indicated that Metzger was "doing well," or feeling "very good," or "much better," although Metzger did report minor problems such as itchiness, laryngitis, and pink eye.

In July 1999 the ALJ held Metzger's first hearing. Metzger testified that his fatigue kept him from working. He testified to difficulty reading for more than 5-10 minutes at a time and memory problems. He denied experiencing chest pain, but said he had some shortness of breath and arm pain if he turned his head side to the side. He testified that he experienced one or two headaches a day, that his hip locked if he walked as far as a city block, and that he could not stand for more than 15 minutes at a time. He also testified that he could cut his lawn on a riding mower and work in his garden. The ALJ denied his claim, finding that he could return to his past work as a vice president of sales. Metzger appealed, and the Appeals Council remanded because although the ALJ found Metzger to have depression, she failed to consider its effect on his ability to work. The Appeals Council instructed the ALJ to obtain additional evidence regarding Metzger's mental condition and, if warranted, obtain supplemental evidence from a vocational expert.

After the remand, and after Metzger was no longer eligible for DIB, Dr. Robert Gordon, a psychologist, examined Metzger and subjected him to psychological tests. He found mild depression, but no cognitive deficits, with IQ scores of "low average" to "average," and above average attention span and concentration. Dr. Gordon reported that all of Metzger's occupational abilities were very good or good. He also reported that Metzger told him he experienced headaches once or twice a week.

In October 2003 Dr. Julian Freeman, an internist, reviewed the medical evidence at Metzger's request, but did not personally examine him. Dr. Freeman determined Metzger had heart disease, cervical root compression, carpal tunnel syndrome, diabetes, sleep apnea, neck and arm pain, and impaired grip. He stated that Metzger suffered several functional limitations including hand function, neck motion, and exposure to vibration, and concluded that Metzger's fatigue compromised his overall ability. At the second hearing Dr. Freeman testified that the results of Metzger's psychological tests—which he did not conduct—supported a diagnosis of organic dementia. He also testified that Metzger's diabetes was poorly controlled and that his cardiac difficulties could be the cause of his fatigue.

The ALJ again denied Metzger's application, concluding that he was not disabled and could still perform his past work, and that his testimony about his symptoms was not credible. The ALJ analyzed Metzger's claim using the five-step process laid out in 20 C.F.R. § 404.1520. She found Metzger had not engaged in substantial gainful activity after his alleged onset date, that he did have a severe impairment, but that his condition did not meet any listings. In doing so, she chose not to credit very heavily Metzger's description of his symptoms because the record showed that he described his symptoms as more severe when speaking in connection with his claim than he did when he consulted his treating doctors.

The ALJ next determined Metzger's residual functional capacity. At this step, she found Metzger to be not credible for the same reasons as before. She also rejected Dr. Freeman's opinion because it conflicted with the findings of specialists and with what Metzger told his treating physicians. The ALJ also rejected the findings of the Wisconsin consultants, finding that the "check-the-box quality" of their assessments rendered them less than useful. She stated that Metzger's conditions "did not just disappear," but that in each case Metzger had gone through "a relatively brief acute phase and the condition was treated and stabilized." She found Metzger's only limitation was on lifting, and she denied his claim, determining that Metzger could still perform his past relevant work as a vice president of sales for a building supply firm. The Appeals Council and the district court concluded that the ALJ's decision was supported by substantial evidence.

When making a determination of disability, an ALJ follows a five-step analysis. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ rejected Metzger's claim at step four, finding he was still capable of performing his past work, and the burden was on Metzger to prove that he could not. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004.) We will not overturn the ALJ's determination in a Social Security case if it is supported by substantial evidence. *Schmidt v. Astrue,* 496 F.3d 833, 841-42 (7th Cir. 2007). The ALJ need not address every piece of evidence in the record—it is enough to "build a bridge" from the evidence to the conclusion. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). It is especially hard to succeed in arguing that the ALJ failed to properly weigh evidence because we may not substitute our own judgment for the ALJ's on matters of credibility, weight of evidence, or conflicting evidence. *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). ALJs, however, may not substitute themselves for doctors and make medical determinations. *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992).

In this case the ALJ supported her decision with substantial evidence and built a logical bridge between that evidence and her conclusion. Contrary to Metzger's assertion, the ALJ did not improperly reject the medical evidence and instead "play doctor." She explained her reasons for rejecting Dr. Freeman's

conclusions. At times, his statements conflicted with Metzger's own statements to his treating physicians about symptoms. At other times, Dr. Freeman's statements conflicted with those of specialists who personally examined Metzger, as when he suggested Metzger's psychological test results indicated organic dementia, contrary to what Dr. Gordon found. She also rejected the conclusions of the Wisconsin medical consultants, finding that the forms they used limited the usefulness of their findings, and that their findings were not accounted for by the facts they referenced. Metzger argues that the ALJ should have recontacted the consultants to get more information about how they reached their findings, but the ALJ did not need to recontact medical sources if she could reach her disability determination without more information. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004.)

Metzger also argues that the ALJ failed to consider the aggregate effects of his impairments, particularly his obesity and diabetes. If this were true, it would be error. *See* 20 C.F.R. § 404.1523, *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). However, the ALJ did consider aggregate effects, noting them when considering that his other conditions were stabilized and considering Metzger's conditions collectively in reaching her determination that no listings were equaled.

Metzger next argues the ALJ improperly determined he was not credible. Reviewing courts should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The ALJ cannot merely ignore claims of pain if they are supported by medical findings or signs. *See Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001). But an ALJ may find a claimant's symptoms not credible even where there is a medically determinable impairment that could reasonably be expected to produce the complained-of symptoms. *Scheck v. Barnhart,* 357 F.3d 697, 701-03 (7th Cir. 2004). The ALJ here adequately explained her reasons for not finding Metzger credible, stating that his physicians' reports did not corroborate that he was experiencing the level of difficulty he described in connection with his claim for benefits. For example, Metzger complained of neck pain during his consultative examination with Dr. Saini, but a week later, visiting Dr. Saini again as a treating physician, he did not report neck pain and Dr. Saini found his neck to be "supple."

The ALJ also supported her conclusion that Metzger was capable of his past work with substantial evidence. Using the medical testimony that she had credited, the ALJ determined that Metzger was precluded only from lifting more than twenty pounds occasionally or more than ten pounds frequently. The ALJ considered the testimony of the vocational experts at both hearings and determined that someone with these limitations could perform Metzger's previous job as a vice president of sales. The first VE testified that he had based his opinion on Metzger's description of his previous job, so contrary to Metzger's argument, the ALJ did not describe the job in a "generic way." *See Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991).

Finally, Metzger argues the ALJ failed to heed the Appeals Council's order to obtain on remand a consultative psychiatric examination because the evaluation and testing were performed by a psychologist rather than a psychiatrist. Although the Appeals Council's order said to obtain a "psychiatric" examination, the order specifically called for "psychological testing and medical source statements about what the claimant can still do despite the impairments." Even if using a psychologist instead of a psychiatrist violated the Appeals Council's order, the error was harmless because a psychologist was capable of gathering the information the Appeals Council wanted added to the record. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error analysis in social security context).

AFFIRMED.