In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1763

L.D.R., a minor by his mother and
guardian, ROSHONDA R. WAGNER,

*Plaintiff-Appellant*,

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:16-CV-829 JD — **Jon E. DeGuilio**, *Judge*.

ARGUED MARCH 26, 2019 — DECIDED APRIL 15, 2019

Before BAUER, ROVNER, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. A mother contests the decision
that her minor son (whom we refer to as L.D.R.) did not qual-
ify for social security disability benefits until second grade.
She also seeks retroactive payments for the first year of
L.D.R.'s life, before she applied for assistance, challenging the

constitutionality of social security laws that bar benefits before application.

We conclude that the administrative law judge's opinion was properly reasoned and well supported by substantial evidence. We also reject the mother's constitutional challenge to the social security laws and agree with the district court's review of the ALJ's opinion. So we affirm.

## I.

The Social Security Administration determined that L.D.R. was disabled as of August 1, 2015, just before he enrolled in second grade. Our opinion focuses on events leading up to that date.

## A.

L.D.R. has had several health problems since he was born in March 2008. While an exhaustive tour through L.D.R.'s medical history is not necessary to resolve this case, a sketch of his medical history shows a child with various health conditions, at times improving, at others deteriorating. He has consistently received medical care in the fields of pediatrics, otolaryngology (ear, nose, and throat, or "ENT"), pulmonology, psychology, and speech pathology. We will discuss L.D.R.'s care in each of these fields.

When L.D.R. was about 18 months old, his family physician saw signs of asthma and diagnosed him with an inflammatory disease of the middle ear for which ear tubes were inserted. Around the same time, a speech pathologist concluded his language skills may be delayed. A clinical psychologist also diagnosed delays in L.D.R.'s social-emotional and adaptive behavioral development.

By age three, L.D.R.'s pediatric ENT confirmed that L.D.R.'s receptive and expressive language skills were delayed. Ear tubes were inserted and that doctor reported improvements in the boy's speech and hearing. A few months later, L.D.R.'s pediatrician concluded that L.D.R. had met several developmental milestones, his asthma was doing well, and if any behavioral problems persisted he should see a psychologist. At nearly age four, a clinical psychologist concluded L.D.R. had met developmental milestones and that his full-scale IQ score was in the "low-average" range.

By age four, L.D.R.'s mother reported him being hyperactive and defiant. While not in therapy, he took medication for his behavioral problems. L.D.R.'s mother also alleges her son began to exhibit sleep disturbances, which resulted in daytime drowsiness. A sleep study showed mildly reduced sleep efficiency and moderate sleep apnea. L.D.R.'s tonsils and adenoids were removed, and his snoring and sleep disordered breathing improved. He remained on respiratory medications, but by age five his pulmonologist found that they were exacerbating his behavior issues.

When L.D.R. was almost five, his pediatrician concluded L.D.R.'s health had made a "dramatic turn" downward. He suffered from moderate asthma, sleep apnea, hearing loss from chronic ear infections, and attention deficit hyperactive disorder. Nine months later, the same pediatrician concluded L.D.R. was not able to function as a normal five-year old. At age five and one-half, in a mental status exam, L.D.R. passed some tests, but not others. Even so, L.D.R.'s kindergarten teacher observed his functional limitations to be neither serious nor very serious.

About age six, the speech pathologist concluded L.D.R. had moderative receptive delay and low average expressive language skills, but a good potential to reach age appropriate language skills. L.D.R.'s pediatrician also reduced his behavioral medication. By March 2015, six months before L.D.R. was deemed disabled, another clinical psychologist diagnosed him with significant attention deficits and impulsive behaviors. While L.D.R.'s communication abilities and intelligence were judged "good" and he had begun kindergarten in general education classes, he had difficulty getting along with his peers and was later slotted to attend special education classes. This same psychologist concluded L.D.R. was "quite able to perform age-appropriate daily activities and behave in an age appropriate manner when taking meds."

By age seven, L.D.R.'s pediatrician found that his middle ear inflammation had improved, his physical exam was normal, medications had managed his mild persistent asthma, and his behavioral problems were stable.

**B.**

Specific administrative regulations control the disability decision. A child is disabled under social security income rules if the child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

A three-step sequential evaluation governs whether a minor is disabled according to social security regulations. Step one asks if the minor has worked (per the regulation "substantial gainful activity"), which L.D.R. has not. 20 C.F.R.

§ 416.924(b). In step two, the ALJ determines whether the minor has a medically determinable impairment (or combination of impairments) that is "severe." 20 C.F.R. § 416.924(c). For a minor, an impairment is not severe if it is a slight abnormality (or combination of slight abnormalities) that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). Absent a severe impairment, the minor is not disabled.

In step three, if the impairment is severe, the ALJ determines whether the minor has an impairment (or combination of impairments) that meets or medically equals the severity of a "listing." The listing in the social security regulations specify the criteria for those impairments considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may be eligible for benefits if an impairment meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404 P., App. 1. The ALJ must consider the combined effect of all medically determinable impairments, even those not severe. 20 C.F.R. §§ 416.923, 416.924a(b)(4), and 416.926a(a) and (c). If the minor has an impairment or combination of impairments that meets or medically equals the severity of the listings, and it has lasted at least 12 months, the minor is presumed to be disabled. If not, the minor is not disabled. 20 C.F.R. § 416.924(d).

In determining whether an impairment (or combination of impairments) of a child functionally equals a listing, the ALJ considers six "domains" of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see Sanchez*

*v. Barnhart*, 467 F.3d 1081, 1082 (quoting *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003)).

## C.

L.D.R.'s mother has consistently applied for social security disability benefits throughout her son's life. She first applied when L.D.R. was age one. Her application, then and now, requests back payments for the first year of L.D.R.'s life, even though supplemental security income regulations preclude benefits pre-dating the application.

In 2012, an administrative law judge denied the benefits application for L.D.R. on the basis that his various problems did not functionally equal a listing under the regulations. L.D.R.'s mother appealed that decision to the district court, which found that the ALJ had not described in specific enough detail the weighing of certain medical evidence, so the court vacated and remanded the case. In the meantime, L.D.R.'s mother had filed another benefits application, which was consolidated on remand and a new ALJ considered both applications.

In a thorough and extensive 28-page single-spaced decision, the ALJ's findings of fact and conclusions of law included that L.D.R. has severe conditions resulting in more than mild limitation in age-appropriate functioning, among them asthma, trouble understanding language, and attention deficit hyperactivity disorder manifesting in a behavior disorder. In the key portion of her opinion (App. 31–45), the ALJ reviewed L.D.R.'s conditions under the six functional equivalence domains listed above. She set out the social security rules for different time frames of a child's life ("older infant or toddler (i.e. a child age 1 to … age 3)"; "a preschooler (i.e.

a child age 3 to … age 6)"; "a school-age child (i.e. a child age 6 to … age 12),"and made factual findings, generally and for different time periods of L.D.R.'s life.

As to the fourth domain (moving about and manipulating objects), the ALJ found that L.D.R. had no limitation before August 2015. As to the other five domains, she found that L.D.R. had various early limitations, but that their severity was "less than marked." She determined that L.D.R.'s conditions did not functionally equal a listing and that L.D.R. did not qualify as disabled. But, the ALJ found that since August 2015 L.D.R.'s worsening behavioral issues, and his limitations in the third (interacting and relating with others) and fifth (caring for one's self) domains had become "marked." The ALJ ultimately concluded that L.D.R. became disabled in August 2015 before he started second grade.

The district court affirmed the ALJ's decision. The court found that substantial evidence supported all the ALJ's findings and that L.D.R. had not presented any argument warranting remand. L.D.R. also challenged the constitutionality of statutes and regulations barring retroactive payments for time before a disability application, which the district court likewise rejected. L.D.R. appeals on both grounds.

## II.

An appeal from denial of social security benefits has layers of review. We review de novo the district court's consideration of the ALJ's decision. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). We will uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.' Our review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). We also do not resolve conflicts or decide questions of credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

L.D.R.'s mother argues first that the ALJ failed to properly analyze and make findings for all six functional equivalence domains specific to each age gradation L.D.R. fell within. An ALJ is to evaluate a child's functioning as compared to other children their age. 20 C.F.R. §§ 416.924b, 416.926a(b). But as the district court noted, the regulations do not require the ALJ to make separate findings within different age groups, so long as relevant evidence from each age group is considered. The regulations identify the age categories as examples of appropriate functioning at different ages. They do not require, or even suggest, that an ALJ must articulate findings separately for each category. 20 C.F.R. § 416.926a(g)-(k). L.D.R.'s mother has not cited any authority (nor did we find any) in which this court (or any other) requires each of the six domains to be assessed separately for each age gradation. Instead, she argues that such particular findings are "necessary for meaningful district court review."

The ALJ compared L.D.R.'s functions to typical children of his age without impairments, *see* 20 CFR § 416.926a(f)(1), by describing the typical functioning of children in each of the

three age categories applicable to L.D.R. for every domain. (App. 31-44) The ALJ's decision considered in particular detail L.D.R.'s various conditions, their history, the treatments he received, and L.D.R.'s reactions to these treatments. The ALJ decision cites evidence during the entire time span from the first application for benefits for L.D.R. in 2009 to his being found disabled effective August 1, 2015. Even if the ALJ's decision did not delineate age gradations under each domain, evidence was presented, and conflicting opinions resolved, in each of the relevant age ranges. This was sufficient to meet regulatory requirements.

L.D.R.'s mother also disputes the ALJ's consideration of the medical evidence, including how L.D.R. was treated for middle ear inflammation, asthma, and sleep apnea. This goes to the sixth domain of "health and physical well-being." L.D.R.'s mother contends the ALJ "minimized" L.D.R.'s multiple impairments and their impact on his functioning. But the comprehensive and detailed discussion in the ALJ's decision of each of these impairments does not square with this assertion.

The ALJ's assessment of L.D.R.'s ear infections (including behavior problems secondary to them) noted how L.D.R.'s mother in 2011 had reported to an ENT physician that her son's speech improved after he received placement of ear tubes, how his audiometric tests were normal, and that a later period of inflammation had resolved. The same is true for the ALJ's evaluation of the evidence of L.D.R.'s asthma. The ALJ considered all pulmonary treatment notes and records, including school records which did not support the alleged number of asthma-related symptoms. And the ALJ provided the same thorough analysis of L.D.R.'s sleep apnea. No

evidence was presented that L.D.R.'s sleep apnea was disabling; to the contrary, the ALJ discussed evidence of L.D.R.'s sleep improvements. The ALJ's conclusion is supported by the results of the sleep study done on L.D.R., his improvement after the surgery to remove the tonsils and adenoids, and the records showing periods of time without sleep issues.

The August 1, 2015 disability date is also well supported in the ALJ's decision. In second grade, L.D.R.'s conditions worsened markedly. School reports, counseling records, and a report from L.D.R.'s second grade teacher all show that his condition had deteriorated. Records confirm L.D.R. visited the nurse approximately 25 times for illness and injuries (including self-injury), and that the school social worker requested an Individualized Education Plan[1] to address L.D.R.'s behavioral and emotional problems. Also at that time, L.D.R.'s second-grade teacher reported he had serious to very serious problems in four functional areas.

Whether as to particular illnesses, or as to the disability date, this appeal effectively asks us to reweigh the evidence the ALJ considered and to come to a different decision based on the facts. That is not our role. "Our review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

### III.

L.D.R.'s mother also challenges the constitutionality of the social security statute and regulations as applied, to the extent

---

[1] 20 U.S.C. § 1414(d)(1)(A) and (d)(6) (statutory authority for IEP); 34 C.F.R. § 300.320 (definition of IEP).

they prohibit the retroactive award of benefits before L.D.R.'s benefits application was filed.[2] She argues this violates the equal protection component of the Due Process Clause of the Fifth Amendment because it "den[ies] benefits to otherwise eligible, i.e. poor and disabled, children for months from the onset of disability to the application filing date."[3] She claims this punishes young, poor children for the tardiness of their parents, or alternatively forces parents with potentially disabled children to apply for benefits before they are even certain such disability exists. The district court rejected this argument, and we review de novo a constitutional challenge like this to federal statutes. *See, e.g., United States v. Leach*, 639 F.3d 769, 772 (7th Cir. 2011).

Rational basis scrutiny applies to equal protection discrimination claims on the basis of age and wealth. *See San Antonio Ind. Sch. District v. Rodriguez*, 411 U.S. 1, 54–55 (1973) (applying rational basis scrutiny to the question of wealth discrimination against children). Here, the district court identified several rational bases for not providing disability benefits retroactively before application. For example, social security benefits are means-tested monthly, 42 U.S.C. § 1382(c), so retrospective determinations before an application is filed would present proof difficulties and create administrative burdens. Another rational basis is that the current rule incentivizes prompt applications, which serves the law's purpose of

---

[2] The earliest a claimant can receive social security benefits is the month after the month of application. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335.

[3] The equal protection analysis in the Fifth Amendment as it applies to the federal government is the same as that under the Fourteenth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954).

helping people meet their basic food, clothing, and shelter needs. Because the challenged statute and regulation prohibiting retroactive benefits pass the rational basis test, they do not violate the constitutional guarantee of equal protection.

## IV.

As L.D.R.'s counsel noted at oral argument before this court, if the ALJ's decision can be meaningfully reviewed, then L.D.R. does not prevail. The ALJ's comprehensive decision, as well as the district court's review, provided more than enough evidence and analysis for our court to review. After that review, we find no error, so we AFFIRM.