In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2472

MICHAEL K. ZELLWEGER,

*Plaintiff-Appellee*,

*v.*

ANDREW M. SAUL,
Commissioner of Social Security,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 17 CV 50195 — **Iain D. Johnston**, *Magistrate Judge*.

ARGUED MAY 20, 2020 — DECIDED JANUARY 14, 2021

Before SYKES, *Chief Judge*, and RIPPLE and KANNE, *Circuit Judges*.

SYKES, *Chief Judge*. Michael Zellweger applied for Social Security disability benefits, claiming that he suffered from a spinal disorder equivalent to Listing 1.04 in the agency's Listing of Impairments. The Listings describe impairments that are considered so severe as to be per se disabling. An administrative law judge ("ALJ") denied his claim, conclud-

ing that the medical evidence did not meet the criteria for Listing 1.04 and that Zellweger could perform light work.

Zellweger sought judicial review. A magistrate judge reversed, ruling that the ALJ's discussion was too cursory at step three of the sequential analysis prescribed in the agency regulations. That's the step in the decision process at which the ALJ is tasked with assessing whether the claimant has an impairment that meets or medically equals one of the Listings. Although the ALJ explained his reasoning more thoroughly later in his decision, the magistrate judge refused to consider that discussion. He thought the *Chenery* doctrine barred him from doing so. *See SEC v. Chenery*, 318 U.S. 80 (1943).

The magistrate judge was mistaken. As we recently explained in a similar case involving Listing 1.04, the sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically. *Jeske v. Saul*, 955 F.3d 583 (7th Cir. 2020). Here, as in *Jeske*, the ALJ thoroughly analyzed the medical evidence at the step in the sequential analysis that addresses the claimant's residual functional capacity. That analysis elaborated on the more cursory discussion at step three and was easily adequate to support the ALJ's rejection of a per se disability under Listing 1.04. Zellweger identifies no other infirmity in the ALJ's decision, so we reverse and remand with instructions to enter judgment for the Commissioner of Social Security.

## I. Background

Zellweger applied for disability benefits in June 2013, claiming a per se disabling spinal condition equivalent to

Listing 1.04. He initially alleged an onset date in October 2008 but later amended it to August 28, 2013. His last-insured status expired on September 30, 2013, so the application presented a very narrow question: whether he was disabled during the one-month period from August 28 to September 30, 2013. *See* 42 U.S.C. § 416(i)(3)(B). The primary medical basis for his application was cervical and lumbar degenerative disc disease. His treatment history included two spinal surgeries many years earlier: a cervical fusion in 2007 and lumbar surgery in 2010. In the meantime, he had also been treated for carpal tunnel syndrome, shoulder pain, diabetes, and other conditions.

Zellweger served time in prison from June 2011 to May 2013. About a month after his release, Zellweger visited Dr. Michael Merry, his primary-care physician. They discussed his diabetes, and he asked to be referred to a specialist for treatment of shoulder pain. Dr. Merry's notes indicate that Zellweger's diabetes had been well controlled by medication while he was in prison but that he suffered from bilateral shoulder pain and a restricted range of shoulder movement likely attributable to a rotator-cuff problem. Dr. Merry also noted that Zellweger was suffering from right-elbow epicondylitis, an inflammation of the tendons colloquially known as "tennis elbow." Zellweger had no signs of wasting or muscle loss, and his reflexes were intact.

Dr. Merry referred Zellweger to Dr. Kevin Draxinger, an orthopedist. Dr. Draxinger found a 20% restriction in Zellweger's ability to bend his neck and rotate his right arm laterally. He referred Zellweger to Dr. M. Marc Soriano, a neurosurgeon. Dr. Soriano's September 2013 examination revealed Zellweger's neck and shoulder range of motion

were normal. All other sensory and reflex exams also showed normal results.

Zellweger's application for disability benefits was denied in early 2014. The agency reconsidered it in August of that year and again denied it. Zellweger then requested a hearing before an ALJ, which took place in February 2016. The ALJ denied the claim after working through the five-step analysis required by 20 C.F.R. § 404.1520(a)(4).

A brief summary of the five-step sequential process will help illuminate the narrow issue on appeal. At step one the ALJ determines whether the claimant has engaged in gainful employment between his alleged disability-onset date and the expiration of his insurance. At step two the ALJ considers whether the claimant suffers from a serious impairment or combination of impairments. At step three the ALJ decides whether the claimant has an impairment that meets or equals one of the categories listed in the agency's Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. If the criteria for a listing are met, the claimant is per se disabled. If not, the decision process moves on and the ALJ considers the claimant's residual functional capacity ("RFC")—that is, his ability to work despite his impairments. At step four the ALJ determines whether the applicant can perform his past relevant work in light of his RFC. Finally, at step five the ALJ decides whether the claimant can do some other work that exists in significant numbers in the national economy.

At steps one and two, the ALJ determined that Zellweger had not worked since his alleged onset date and suffered from the following severe impairments: cervical and lumbar degenerative disc disease, diabetes, and carpal tunnel syndrome. At step three—the per se disability analysis—the ALJ

considered whether Zellweger's impairments met or equaled the criteria in Listing 1.04A, the relevant listing for per se disabling spinal disorders. Those criteria are:

> [E]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ explained that the evidence did not establish the necessary criteria:

> As discussed more below, medical records establish lumbar and cervical degenerative disc disease, with neurological involvement, status post surgery. (See, for example, Exhibit B4F/122-129). However, the criteria of [L]isting 1.04 are not satisfied in this case. For example, during an examination on June 19, 2013, the claimant displayed obesity, right lateral epicondylitis, and limited shoulder range of motion, but normal functioning otherwise. (Exhibit B3F/6-8).

After step three, the ALJ provided an in-depth discussion of the medical evidence in his analysis of Zellweger's RFC. He analyzed the reports of treating physicians and state-agency consultants in order to assess Zellweger's limitations. The ALJ found that Zellweger's claim of disabling pain was

not entirely credible because the medical evidence did not support it and indeed some treating physicians reported that Zellweger was not in pain. Although Zellweger could not perform physically strenuous work, the ALJ concluded that he had the residual functional capacity to perform light physical labor.

At step four the ALJ concluded that Zellweger's past relevant work—as a truck driver, janitor, and machine operator—exceeded his RFC. At step five the ALJ determined that considering Zellweger's age, education, experience, and RFC, there were jobs in significant numbers in the national economy that Zellweger could perform. As such, Zellweger was not disabled during the relevant time period. The ALJ denied the claim for benefits.

Zellweger sought review in the district court. *See* 42 U.S.C. § 405(g). He challenged the ALJ's step-three determination that he was not per se disabled, arguing that the ALJ had not adequately explained his conclusion that the evidence did not satisfy the Listing 1.04A criteria.

The parties consented to transfer the case to a magistrate judge for decision. The magistrate judge sided with Zellweger and reversed. Though skeptical about the merits of Zellweger's claim, the magistrate judge held that the ALJ's cursory discussion at step three was inadequate and that the *Chenery* doctrine barred consideration of the more detailed explanation that appeared in the next section of the decision. The Commissioner moved for reconsideration under Rule 59(a) of the Federal Rules of Civil Procedure, but the magistrate judge denied the motion, again citing the *Chenery* doctrine. The Commissioner appealed.

## II. Discussion

The sole issue in this case is whether the magistrate judge correctly applied the *Chenery* doctrine. He did not. *Chenery* generally confines a reviewing court to the agency's actual rationale for its decision, not an after-the-fact justification. *See Chenery*, 318 U.S. at 87–88. As we recently explained in *Jeske*, however, nothing in *Chenery* prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision. 955 F.3d at 590.

Like this case, *Jeske* involved a claim of per se disability under Listing 1.04. The similarities continue: In *Jeske* the ALJ's analysis at step three was "brief," but "the discussion picked up in the next part of the ALJ's decision." *Id.* at 589. We explained that a reviewing court does "not violat[e] *Chenery*'s command by looking at the ALJ's more thorough discussion of the evidence" elsewhere in the decision. *Id.* at 590. We noted that the five-step decision process "comprises sequential determinations that can involve overlapping reasoning," and "[t]his is certainly true of step three and the RFC determination that takes place between steps three and four." *Id.* We summed up the point in this way:

> [W]hen an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And, as we've already recognized, "[t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant."

*Id.* (quoting *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015)).

*Jeske* shows why the magistrate judge was wrong to think he was barred from considering the whole of the ALJ's decision—more particularly, the ALJ's discussion of the medical evidence in the section of his decision addressing Zellweger's RFC. That discussion is quite detailed, and it easily supports the ALJ's step-three rejection of Zellweger's claim of per se disability under Listing 1.04. It's worth noting that the ALJ's step-three analysis specifically incorporates his evaluation of the medical evidence in the next section of his decision. Zellweger hasn't identified any substantive flaw in that lengthy analysis; rather, his argument rests entirely on the relative brevity of the ALJ's step-three discussion.

Zellweger argues that the magistrate judge's application of the *Chenery* doctrine finds support in *Minnick v. Colvin*, 775 F.3d 929 (7th Cir. 2015), and *Kastner v. Astrue*, 697 F.3d 642 (7th Cir. 2012). Not so. In *Minnick* both the step-three discussion and the RFC analysis were inadequate. 775 F.3d at 936–38. We did not suggest that an ALJ's step-three determination cannot be supported by a discussion of the medical evidence appearing under the RFC heading. In *Kastner* we relied on *Chenery* to reject the Commissioner's post hoc rationale for the ALJ's decision because it did not appear *anywhere* in the ALJ's opinion. That's hardly the case here, where the RFC analysis is extensive and supports the ALJ's determination that Zellweger is not per se disabled under Listing 1.04.

The magistrate judge's misapplication of *Chenery* requires reversal of the judgment below. Because Zellweger

identifies no other error in the ALJ's decision, on remand the court should enter judgment for the Commissioner.

REVERSED AND REMANDED