In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 23-1632

BRENDA K. WARNELL,

*Plaintiff-Appellant,*

*v.*

MARTIN J. O'MALLEY,
Commissioner of Social Security,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:22-cv-00166-WCL — **William C. Lee**, *Judge.*

———————

ARGUED FEBRUARY 8, 2024 — DECIDED APRIL 8, 2024

———————

Before EASTERBROOK, SCUDDER, and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Administrative law judges who decide claims for social security disability benefits often find themselves overloaded with work—with many more cases to decide than hours available in a day. With so much at stake for applicants, the responsibility brings with it a weighty obligation of diligence. So the challenge for an ALJ becomes

combining diligence with efficiency, including in preparing written orders of decision.

Before us is Brenda Warnell's challenge to an ALJ's determination that she is not disabled and therefore not entitled to disability benefits or supplemental security income. By any measure, the ALJ's written decision is clear, thorough, and commendable. Yet Warnell claims that the ALJ needed to do more, including by avoiding summaries of the medical evidence and instead providing hyper-detailed physician-by-physician accounts supported by fulsome pinpoint citations to medical records. Not only is longer better, it is legally necessary to withstand appellate review—or so the argument goes.

We reject this contention as it stands at complete odds with what an ALJ must do to support its decision with substantial evidence, a standard that the Supreme Court has emphasized is light. So we decline the invitation to impose a rigid rule of artificial completeness upon ALJ orders of decision. What the ALJ produced here was more than sufficient and supported by substantial evidence. We affirm.

**I**

A

In 2006 Brenda Warnell received a disc-removal and fusion surgery in her upper spine. Twelve years later, she sought treatment from a pain-management specialist, reporting severe discomfort in her head, neck, and lower back. From 2018 to 2021, Warnell met regularly with physicians who monitored her symptoms and prescribed pain-relief medications.

Warnell's medical record is mixed regarding the severity of her condition. An MRI from 2018 revealed bone spurs in her upper spine that pinched local nerves. But the same MRI showed no significant vertebrae narrowing, a generally "[u]nremarkable" spinal cord, and "[n]o acute abnormality" in the bones. A 2019 CT scan likewise indicated "[n]o acute osseous findings," "[n]o destructive changes," and no "adjacent inflammation."

Results from physical examinations were likewise mixed. On at least three occasions, Warnell could not raise her leg from a sitting position without pain. She also expressed tenderness in her neck, pain while performing physical-therapy exercises, and consistent throbbing in her head and back. Physicians assessed Warnell with chronic pain syndrome and chronic migraines.

At the same time, however, Warnell performed well on several tests designed to measure her movement capabilities. She exhibited normal movement, muscle strength, stamina, range of neck and hip motion, and reflexes. She also successfully completed walking exercises. And at least twice she raised her leg while seated without pain, contradicting earlier results.

Perhaps unsurprisingly, medical experts reached differing conclusions regarding Warnell's condition. Three—Dr. Brian LaMar, Dr. Daniel Roth, and Anthony Escotto, MPT—determined that Warnell had severely limited functional capacity. But two state-agency physicians—Dr. J. Sands and Dr. J.V. Corcoran—assessed narrower limitations, finding that Warnell remained capable of limited physical exertion.

B

In September 2019 Warnell applied for disability insurance benefits and supplemental security income under the Social Security Act. She alleged that she could not work due to debilitating migraines and chronic pain in her back, shoulders, and neck.

The ALJ disagreed. Though the judge acknowledged that Warnell suffered from some impairments, she determined that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity and degree of [the] functional limitations alleged by the claimant." The ALJ found that Warnell's pain symptoms did not prevent her from performing light work with moderate noise and limited physical requirements. Based on testimony from a vocational expert, the ALJ concluded that a significant number of jobs matched that description. So she denied Warnell's claim, finding her not disabled.

The ALJ explained her reasoning in a 17-page decision. Summarizing the medical evidence, she emphasized several indications that Warnell's pain was manageable, including the non-acute CT and MRI readings, promising internal medicine evaluations, and Warnell's success during walking, leg raising, and climbing tests. Of the five medical experts who assessed Warnell's functional capacity, the ALJ considered the two state-agency examiners to be the most persuasive. The judge rejected the conclusion reached by the three other physicians—that Warnell was more severely limited—because it conflicted with the medical treatment records.

After the district court affirmed the ALJ's decision, Warnell sought our review.

## II

### A

We affirm an ALJ's decision denying disability benefits so long as it is supported by substantial evidence. The threshold for substantial evidence "is not high." See *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). When reviewing a disability decision for substantial evidence, "[w]e will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

The medical record substantially supports the ALJ's decision to reject the functional-capacity assessments of Dr. LaMar, Dr. Roth, and Mr. Escotto. The ALJ reasonably viewed each physician's opinion as contradicted by multiple lines of evidence, including imaging test results, physical examinations, and treatment sessions that documented normal strength, stamina, and reflexes. The physicians also failed to account for the effectiveness of Warnell's medication, which at various times relieved between 40% and 80% of pain without side effects. Nor did they provide any explanation for the twelve-year delay in the onset of Warnell's alleged symptoms.

The ALJ properly observed that the expert reports that Warnell relies upon also contain important flaws. Dr. Roth, for example, neglected to fill out a section of his report form that asked him to "identify the particular medical or clinical

findings … which support your assessment." And Dr. LaMar recorded observations that undermined his own conclusions, noting that Warnell exhibited "normal" strength and writing "NONE" to describe Warnell's "inflammation, pain, swelling, [and] stiffness."

In light of the medical evidence contradicting Warnell's experts, we have no trouble concluding that substantial evidence supported the ALJ's decision to reject them. See *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (stating that "[w]hen treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision"); *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (emphasizing that we will reverse an ALJ's disability determination "only if the record compels a contrary result" (cleaned up)).

Ordinarily our opinion would end with that conclusion. But we need to say more in response to the surprising contention Warnell presses on appeal.

B

Warnell rejects the analysis above not by identifying any substantive error of reasoning or medical judgment, but by putting the ALJ's written decision under a microscope and then flyspecking it. Warnell insists, for instance, that the ALJ failed to provide page numbers every time she cited the medical record—and that her opinion does not always distinguish between multiple supporting exhibits in the administrative record. So, too, does Warnell fault the ALJ for only summarizing the medical evidence instead of recounting it in full detail physician-by-physician.

We are taken aback by this argument, for nothing in our case law instructs ALJs that surviving appellate review requires anything remotely resembling a mandate to type the medical record into a written decision. Given the extraordinary demands already on social security ALJs, we are disinclined to impose a novel make-work typing or appendix mandate.

The better course is to stick to our precedent, which is all about substance and not form. Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning. See *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (explaining and emphasizing that an ALJ "need not provide a complete written evaluation of every piece of testimony and evidence" (cleaned up)); *Gedatus*, 994 F.3d at 901 (observing that a "[p]artial summary of select evidence" is appropriate and consistent with the articulation requirement).

All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); see also *id.* (stating that we will consider an ALJ's opinion to be adequately explained so long as it does not "lack[] adequate discussion of the issues"). At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his

conclusion." See, *e.g.*, *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ here provided a more than sufficient explanation for why the medical record led her to deny Warnell's claim. The judge devoted considerable space to addressing the persuasiveness of Warnell's experts. She highlighted specific evidence that contradicted their conclusions, going so far as to cite and describe discrete examination findings. The ALJ also acknowledged and grappled with conflicting evidence, ultimately concluding that the treatment record as a whole supports a finding of non-disability. The law required no more of the ALJ, so we AFFIRM.