In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1852

LACEY THORLTON,

*Plaintiff-Appellant,*

*v.*

MICHELLE KING,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for
the Southern District of Indiana, New Albany Division.
No. 4:23-cv-00004-KMB-TWP — **Kellie M. Barr**, *Magistrate Judge.*

ARGUED JANUARY 29, 2025 — DECIDED FEBRUARY 11, 2025

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Joshua Smitson applied for social
security disability benefits and supplemental security income,
alleging that his asthma and chronic obstructive pulmonary
disease prevented him from working. After an evidentiary
hearing, an administrative law judge denied Smitson's appli-
cation, finding that his ailments were limiting but not disa-
bling. We affirm, as our review proceeds with a light touch—

not holding ALJs to an overly demanding evidentiary stand-
ard and in turn reinforcing that claimants bear the affirmative
burden of proving their disability. The ALJ's decision here
finds sufficient support, if just barely, in the administrative
record.

## I

### A

Nobody questions that Joshua Smitson's respiratory con-
dition left him with frequent episodes of shortness of breath
and trouble walking and standing for long periods. His med-
ical records, for instance, show that he had a weeklong hospi-
tal stay in 2021 for an acute respiratory exacerbation stem-
ming in part from an accidental drug overdose.

To treat Smitson's asthma and chronic obstructive pulmo-
nary disease, his doctors prescribed, among other medica-
tions, an inhaler and frequent nebulizer use. (A nebulizer is a
device that converts medication from a liquid to a mist so it
can be inhaled into the lungs.) Smitson's nebulizer prescrip-
tion directed him to use the treatment four times a day. At the
evidentiary hearing before the ALJ, he testified that he used
the nebulizer upon waking up in the morning, over lunch, in
the late afternoon, and before bed, with each treatment taking
about thirty minutes. Medical records and Smitson's own tes-
timony indicated that, after some trial and error, his medica-
tion regiment worked effectively to control his symptoms.

### B

Following the evidentiary hearing, the ALJ denied bene-
fits, concluding that Smitson was not disabled. After canvass-
ing Smitson's account of his own symptoms, his medical rec-
ords, and medical opinions offered during the administrative

proceeding, the ALJ found that Smitson was able to manage his symptoms so long as he complied with his doctors' medical treatment recommendations. Given the improvement in Smitson's condition during the relevant period, the ALJ determined that Smitson had a residual functional capacity, or RFC, to perform "light work" subject to additional limitations minimizing his exposure to triggers like prolonged walking and allergens. Crediting testimony offered by a vocational expert, the ALJ then found jobs were available within the national economy for someone with an RFC like Smitson's. The district court affirmed.

Between seeking review in the district court and pursuing this appeal, Smitson passed away. His widow, Lacey Thorlton, then substituted as the appellant and urges us to conclude the ALJ committed error by failing to recognize Smitson would need time off to address acute exacerbations like asthma attacks and, relatedly, that his prescribed nebulizer use—four times each day—prevented him from performing not only light work but any form of employment.

## II

Two principles combine and lead us to affirm the ALJ's decision.

First, as we have underscored time and again, a claimant bears the burden of proving their disability. See, *e.g.*, *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity."); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (explaining that a claimant has the burden of showing why they are disabled);

see also 20 C.F.R. § 404.1512 (placing the "[r]esponsibility for evidence" on the claimant).

Establishing the existence of an impairment is not enough. The claimant must present evidence of limitations affecting their capacity to work. See *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (rejecting an appeal where the claimant failed to "point[] to any medical opinion or evidence to show" that the ALJ should have adopted additional "specific limitations").

Oftentimes a claimant can satisfy that burden by, for example, asking their "doctor to lay out in plain language exactly what it is that the claimant's condition prevents" them from doing, *Punzio*, 630 F.3d at 712, or presenting testimony about the effect of their symptoms that is consistent with the objective medical evidence. See 20 C.F.R. § 404.1529(a), (c)(3)–(4). The administrative process, in short, provides a claimant with ample opportunity to raise various limitations and offer evidence to support them. See, *e.g.*, *id.* § 404.1513(a)(2) (allowing a claimant to provide "a statement from a medical source about what [the claimant] can still do despite [their] impairment(s)"); *id.* § 404.1545(a)(3) ("We will consider any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."); *id.* § 404.929 (providing the opportunity to present new evidence, including their own testimony, at a hearing before an ALJ).

Next comes our role in disability benefit appeals: we sit as a court of review applying a very deferential standard to our assessment of ALJ denials of benefits. We must affirm so long as the ALJ's decision finds support in "substantial evidence." No matter how that standard may read or sound, the

Supreme Court has emphasized just how deferential it is as a legal matter: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" when it comes to administrative decisions. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Put most simply, we will reverse an ALJ's decision only if the record "compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotation marks omitted) (citation omitted).

## III

Substantial evidence supported the ALJ's conclusion that Smitson was able to perform light work. As the ALJ explained, the medical records showed that prescribed medications left Smitson's challenges and conditions, including periodic asthma attacks, well-managed, at least during the period relevant to our review. We see no infirmity in that finding, especially given the ALJ's incorporation of a walking and standing limitation in the RFC.

The harder question is whether the ALJ fell short in considering Smitson's testimony about his use of a nebulizer four times each day. While a claimant's testimony about their symptoms and related treatments "will not alone establish" that the claimant is disabled, an ALJ must consider such testimony if it "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), (c)(3)–(4); see SSR 16-3p, 2017 WL 5180304, 82 Fed. Reg. 49462, 49464 (Oct. 25, 2017) ("We will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled.").

While under no obligation to "discuss every piece of evidence in the record," an ALJ may not "ignore a line of evidence supporting a finding of disability." *Deborah M.*, 994 F.3d at 788 (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)); see also *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." (citation omitted)). We agree with Thorlton that the ALJ would have done better to directly confront Smitson's testimony about his nebulizer use when deciding whether he suffered from a disability entitling him to benefits. But, in the end, that shortcoming does not require us to reverse. When viewing the decision in its entirety, we are confident the ALJ considered Smitson's testimony and his nebulizer use. See *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (explaining that we review an ALJ's decision holistically).

The ALJ recounted much of Smitson's testimony, relaying a description of his symptoms and indicating that he uses inhalers and nebulizer treatments. In discussing Smitson's medical records, the ALJ observed that Smitson's respiratory conditions were "well managed with medications when the claimant was compliant with treatment recommendations." In short, this is not a case where the ALJ presented a "skewed version of the evidence," *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), or failed to "minimally discuss" contrary evidence, *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000), so reversal is not warranted on this ground.

Thorlton sees the analysis differently and urges us to remand to the ALJ to expressly consider Smitson's testimony regarding the intervals of his nebulizer use. We decline the

invitation. When an ALJ rejects a claimant's testimony as not credible, they must articulate the reasons for that finding. See *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Failure to do so can result in reversal. See *Villano v. Astrue*, 556 F.3d 558, 564 (7th Cir. 2009) (remanding case to agency so ALJ can "give reasoned assessments of [the claimant's] credibility"). But we see no indication that the ALJ disregarded or discredited Smitson's testimony. Rather, we see the ALJ's RFC determination as consistent with Smitson's testimony.

Smitson testified that he took the nebulizer treatment twice outside of an ordinary workday—once in the early morning and another later at night. As for the remaining two treatments, the evidence was indefinite. In his own testimony, Smitson stopped short of explaining whether he could use the nebulizer over a lunch break or whether his third treatment could come in the late afternoon or early evening, just after a standard workday. We cannot say with confidence—and especially within the confines of our deferential standard of review—that Smitson's testimony made clear that his typical cycle of nebulizer treatments would result in an inability to work. See *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) ("In our substantial evidence determination, we review the entire administrative record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner.").

Other evidence in the record informs our review. Neither the medical records nor any of the opinions offered by reviewing consultants or physicians indicated that Smitson's nebulizer use would affect his ability to work or suggested any necessary accommodation to facilitate full-time

employment. Indeed, certain medical records suggested that Smitson's nebulizer use, at least at times during the relevant period, was intermittent. His treating physician, for example, observed that, in March 2021, Smitson was managing his symptoms well with his inhaler alone.

In the final analysis, the administrative record lacked evidence compelling the ALJ to find that Smitson would need a certain amount of time off, or some other form of accommodation, to address asthma attacks or permit medically necessary nebulizer treatments during a workday. Could the ALJ have done and said more? Yes, and that is what makes this case difficult. But multiple times over "we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Under that minimal requirement, the ALJ said enough here to support its decision and permit meaningful appellate review. See *Gedatus*, 994 F.3d at 901 (explaining that a "partial summary of select evidence" is appropriate under the minimal articulation requirement).

So, under the generous standard of review afforded to ALJ decisions and mindful of the evidentiary gap Smitson left open in the administrative record, we AFFIRM.