In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1898

DARLENE CHRISMAN, on behalf of N.R.C.,

*Plaintiff-Appellant,*

*v.*

FRANK BISIGNANO, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:23-cv-00046-SLC — **Susan L. Collins**, *Magistrate Judge.*

ARGUED APRIL 23, 2025 — DECIDED MAY 13, 2025

Before HAMILTON, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

PER CURIAM. Darlene Chrisman, on behalf of her minor granddaughter N.R.C., challenges the Commissioner of Social Security's denial of her Supplemental Security Income application. We conclude that the administrative law judge's opinion was properly reasoned and supported by substantial evidence. We therefore affirm.

**I.**

In June 2022, the Social Security Administration determined that N.R.C. was not disabled. Chrisman's appeal is limited to whether N.R.C.'s impairments functionally equal one of the listings of impairments in 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404 P., App. 1. She asserts that the ALJ erroneously determined that N.R.C. has "less than marked" impairments in the domains of "attending to and completing tasks" and "caring for yourself." We therefore recite only the facts relevant to those domains.

**A.**

Chrisman has been N.R.C.'s guardian since N.R.C. was 18 months old. In March 2021, just after N.R.C.'s fourth birthday, Chrisman applied for supplemental security income on N.R.C.'s behalf. Chrisman alleged that N.R.C.'s disability began in January 2020 and that N.R.C. suffered from a developmental disorder called separation anxiety disorder of childhood, among other impairments.

When N.R.C. was about three-and-a-half years old in September 2020, a nurse practitioner referred her for counseling after Chrisman explained N.R.C.'s history of trauma and fears of abandonment. Shortly thereafter, the counseling center began administering therapy and skills coaching sessions aimed at, among other things, developing skills for emotional regulation and healthy attachment. Records show that, on average, N.R.C. met with a skills coach for about eight hours a week, split between three sessions at daycare and one session at home. In January 2021, a psychiatrist diagnosed N.R.C. with separation anxiety disorder and dissociative engagement

disorder. In April 2021, N.R.C. was additionally diagnosed with reactive attachment disorder and ADHD. The doctor prescribed guanfacine, an ADHD medication, to help manage the symptoms of those disorders.

During the first few months of counseling, before N.R.C. began taking medication, N.R.C. made minimal or slight progress towards her behavioral goals. At times, Chrisman and the skills coach reported that N.R.C. defiantly refused to follow directions and regressed with her toileting skills when she urinated and defecated on herself or the floor. Records from the counseling center show that N.R.C. was more compliant at school than at home but still needed frequent redirection to stay on task.

N.R.C.'s preschool teacher filled out a questionnaire in May 2021, after N.R.C. began taking medication. The teacher reported, by filling in bubbles on a standardized survey, that N.R.C. experiences a "very serious problem" following instructions, taking turns, transitioning between tasks, and requires frequent redirection. The teacher elaborated that N.R.C. has a "very minimal" attention span. N.R.C. also had a "very serious problem" obeying adults and seeking attention appropriately. The teacher explained that this involved "inappropriate" behavior when she is frustrated or angry. The teacher additionally noted that N.R.C.'s medication caused constipation.

In the following months, notes from the skills coach showed that N.R.C. was generally making "some" or "good" progress towards her goals. There were some sessions during which the skills coach noted only "minimal" or "no" progress—for example when N.R.C. urinated at school or at home "because she was mad," or deliberately disobeyed

directions. Notwithstanding these setbacks, by the end of the summer, Chrisman told counseling center staff that "overall [N.R.C. is] doing better." Records from providers at the counseling center report that N.R.C. made progress toward some goals, and minimal or no progress toward others.

In July 2021, a non-examining psychologist from the state agency reviewed N.R.C.'s medical records (including those from the counseling center) and the teacher questionnaire. The psychologist concluded that N.R.C. was not disabled. N.R.C. had a "less than marked" limitation for attending and completing tasks because the medication she was taking for her ADHD was helping. N.R.C. also had a limitation in caring for herself because of her potty-training issues, but it too was "less than marked."

In August, the counseling center asked N.R.C.'s pediatrician to evaluate whether N.R.C.'s toileting issues were medical, not behavioral. Chrisman told the pediatrician that N.R.C. had no issues at school, but frequent accidents at home. The pediatrician assessed N.R.C. for enuresis (urinary incontinence) and soiling and recommended further medical evaluation if N.R.C. began having frequent accidents at school. A few months later, a nurse practitioner who specialized in pediatric gastroenterology evaluated N.R.C. for constipation, encopresis (fecal incontinence), and withholding. The specialist noted that the issues appeared to be behavioral and referred N.R.C. for physical therapy.

Shortly thereafter, a psychiatrist at the counseling center reported that N.R.C.'s ADHD and reactive attachment disorder were "chronic," but "moderate."

In October 2021, another state-agency psychologist reviewed updated versions of N.R.C.'s medical and counseling records, as well as the July 2021 psychologist report. This doctor opined that there was no evidence that N.R.C.'s conditions had worsened and agreed with the initial opinion that N.R.C. was not disabled.

N.R.C. received physical therapy from December 2021 to February 2022. The physical therapist reported that after about a month of therapy, N.R.C. was having successful bowel movements. Notes from those sessions reflect that N.R.C. still had occasional accidents but was making progress.

The skills coach's records continued to reflect N.R.C.'s progress toward her goals—but with regressions at times. Further, the notes from the sessions show that N.R.C. had infrequent toileting issues at school. In October 2021, another doctor from the counseling center evaluated N.R.C. and noted that N.R.C.'s behavioral problems (tantrums) were "constant," but "mild," and "improving." As for her potty-training issues, the behaviors were "better with medication" (guanfacine), and "both guardian and day care have seen a big difference in [N.R.C.'s] behavior and focus" because of the medication. The doctor concluded in the psychiatric exam that N.R.C.'s behavior was "appropriate for [her] age." About a month later, doctors increased her medication dosage. By February 2022, the counseling center reported "some progress" toward N.R.C.'s goals of being obedient and demonstrating appropriate behaviors regarding bowel movements and attachment.

In March 2022, the psychiatrist from the counseling center noted that N.R.C.'s behavioral symptoms were "moderate,"

and the therapist reported that she had "[v]ery severe separation anxiety, even though slightly better from before." As for the symptoms of ADHD, the psychiatrist noted that she had improper toileting events but that the guanfacine for her behavioral disorders appeared to be helpful.

**B.**

After N.R.C.'s application for social security benefits was denied initially and on reconsideration, Chrisman appeared at a hearing in April 2022. Chrisman testified that N.R.C. had begun to wear diapers because she has an "almost daily" issue with toileting, including soiling herself, the floor, or any soft surface "because she's mad at me." Chrisman testified that without medication, N.R.C.'s defiant behaviors would be "intolerable."

After the hearing, the ALJ issued a written decision denying the application for benefits for N.R.C. She followed the five-step evaluation process to determine whether N.R.C. was disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.924(a); *see generally L.D.R. v. Berryhill*, 920 F.3d 1146, 1150–51 (7th Cir. 2019).

At step one, the ALJ determined that N.R.C. had not engaged in substantial gainful activity since the application date. 20 C.F.R. § 416.924(b). At step two, she determined that N.R.C. had severe impairments of ADHD, reactive attachment disorder, separation anxiety, constipation, encopresis, anxiety, and a personality disorder. 20 C.F.R. § 416.924(c). But, at step three, the ALJ found that those impairments did not meet the criteria of any listed impairment in the regulations that is presumptively disabling. She considered Listings 112.06 (anxiety and obsessive-compulsive disorders), 112.08

(personality and impulse control disorders), and 112.11 (neurodevelopmental disorders).

The ALJ then considered whether N.R.C.'s impairments functionally equaled a listing, meaning that she was severely limited in specified "domains" of life activity that were effectively as disabling as the listing's criteria. 20 C.F.R. § 416.926a(b)(1); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006). To have the functional equivalent of a listed impairment, a claimant must have an "extreme" limitation in at least one domain or a "marked" limitation in at least two. 20 C.F.R. § 416.926a(d). The ALJ found that N.R.C. had no limitations in acquiring and using information; moving about and manipulating objects; and health and well-being. The ALJ also found that N.R.C. had "less than a marked limitation" in attending and completing tasks; interacting and relating with others; and ability to care for herself.

To explain this determination, the ALJ gave an overview of Chrisman's testimony at the hearing; the teacher's questionnaire; medical records from the counseling center, pediatrician, and gastroenterology clinic; and the disability evaluations from the state doctors in July and October 2021. The ALJ found that the teacher's questionnaire was "partially persuasive," because it was "somewhat consistent" with the medical record except that N.R.C. was improving with a skills coach. The ALJ found the state-agency doctors who evaluated N.R.C.'s records to be "persuasive" because their conclusions were consistent with the medical record.

The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Chrisman sought review in the district court. That court determined substantial

evidence supported the ALJ's conclusions and therefore up-
held the ALJ's decision.

**II.**

On appeal, Chrisman argues that the ALJ failed to con-
sider evidence favorable to N.R.C. and to build a logical
bridge between the evidence and her determination that
N.R.C. is not disabled. Chrisman contends that the ALJ over-
looked evidence that N.R.C. has marked limitations in two
domains: (1) "attending and completing tasks" because
N.R.C. needs a skills coach; and (2) "caring for yourself" be-
cause of her toileting issues. *See* 20 C.F.R. § 416.926a(b)(1)(ii),
(v). Chrisman seeks a remand for the ALJ to consider the evi-
dence favorable to N.R.C. and articulate the basis of her deci-
sion.

Our court will affirm an ALJ's decision denying benefits
so long as it is supported by substantial evidence, a threshold
that is "not high." *Warnell v. O'Malley*, 97 F.4th 1050, 1052
(7th Cir. 2024) (citing *Biestek v. Berryhill*, 587 U.S. 97, 103
(2019)). The ALJ need not discuss every piece of evidence; in-
stead, she must build a "logical bridge" from the evidence to
her conclusion by providing an explanation sufficient to allow
us to assess the validity of the ultimate findings and afford
meaningful review. *Id.* at 1054 (citation omitted). In doing so,
the ALJ may not "ignore a line of evidence supporting a find-
ing of disability." *Thorlton v. King*, 127 F.4th 1078, 1082
(7th Cir. 2025) (citation omitted). We review the ALJ's deci-
sion holistically to determine whether the ALJ grappled with
evidence favorable to the claimant, *id.*, but we will not recon-
sider facts, reweigh evidence, or resolve conflicts, *see L.D.R*,
920 F.3d at 1152. And if substantial evidence supports the dis-
ability determination, we must affirm the decision even if

reasonable minds could differ about whether the claimant is disabled. *Id.*

### A.

Chrisman argues that the ALJ erred by not discussing Chrisman's testimony that N.R.C. could stay on task for "maybe 15 minutes," as well as N.R.C.'s need for a skills coach. She contends that this evidence contradicts the finding that N.R.C. had a "less than marked" limitation in attending to and completing tasks. But the ALJ's summary of the record did not overlook N.R.C.'s challenges with focusing. The ALJ acknowledged Chrisman's testimony that "focus and concentration are an issue," and, at least five times, the ALJ noted instances where N.R.C. struggled to focus or follow directions. Chrisman raises other, additional occasions when N.R.C. required redirection or assistance focusing on a task, but an ALJ "need not address every piece or category of evidence" in the record. *Warnell*, 97 F.4th at 1053. Further, the ALJ devoted four paragraphs to a recitation of the skills coach's notes. The ALJ considered N.R.C.'s receipt of those services, particularly because ALJ also explained that the teacher's questionnaire was only partially persuasive because it did not reflect that N.R.C. "was showing improvement with a skills coach."

Chrisman contends that the skills coach was a "full-time aide" who provided a "highly structured environment" for N.R.C., but the record shows that the skills coach provided support for about six hours per week at school and two hours at home. At all other times, N.R.C. was in a normal daycare setting or in Chrisman's care. The ALJ therefore appropriately understood the scope of the skills coach's services and

accounted for them in determining that N.R.C. has a "less than marked" limitation in attending to and completing tasks.

Moreover, taken in context, the ALJ's findings are consistent with the applicable standards. Under the regulations, the domain of "attending to and completing tasks" involves "pay[ing] attention when you are spoken to directly;" "sustain[ing] attention to your play and learning activities;" "concentrat[ing] on" activities like puzzles or art projects; as well as "dressing [or] feeding yourself." 20 C.F.R. § 416.926a(h)(2)(iii). Preschool children like N.R.C. should "usually" be able to wait their turn and change from an activity when prompted. *Id.* Relevant to this domain, the ALJ observed that N.R.C. can dress herself (citing Chrisman's testimony) and feed herself (citing Chrisman's testimony and notes from the skills coach). The ALJ noted instances when N.R.C. struggled to follow directions or required redirection, as well as N.R.C.'s ability at times to sustain her attention on preferred activities. Overall, the ALJ noted that N.R.C. "at times did well listening and following directions but had to be redirected," suggesting that N.R.C. had some limitation. But, consistent with the regulations, the ALJ found that this limitation did not rise to a "marked" limitation because of evidence (from the skills coach, Chrisman, and state agency doctors) that the medication was "helping." This explanation met the "minimal" articulation requirement. *Warnell*, 97 F.4th at 1053.

To be sure, the ALJ could have more explicitly tied her observations about N.R.C.'s abilities and behaviors to the criteria in the regulations, but her explanation is sufficient for appellate review. ALJs are not required to formally tie evidence to each domain (or activity within each domain) because the

domains often overlap, and this court reviews the decision holistically. 20 C.F.R. § 416.926a(c), (f)(3); *Rice v. Barnhart*, 384 F.3d 363, 370 & 370 n.5 (7th Cir. 2004).

**B.**

Chrisman next asserts that the ALJ ignored evidence that N.R.C. was continuing to have toileting issues, which is relevant to the domain of "caring for yourself." She highlights that the ALJ did not mention in her summary of Chrisman's testimony that N.R.C. had "daily" issues, including on the morning of the hearing, with urinating or defecating in inappropriate places, nor various other occasions on which the skills coach noted that an accident had occurred. But again, the ALJ acknowledged Chrisman's testimony that N.R.C. "has problems defecating appropriately." The ALJ also mentioned N.R.C.'s medical conditions that related to her accidents and the notes from the counseling center that a "monster" told N.R.C. to "poop on [her]self." And the ALJ further observed that although N.R.C. had regressed from being fully potty trained, N.R.C. was "doing better going to the bathroom on her own," as of February 2022. In sum, the ALJ sufficiently acknowledged evidence supporting a finding of disability.

The ALJ also adequately explained her conclusion that N.R.C. had less than a marked limitation in the ability to care for herself. Under the regulations, "caring for yourself" generally includes regulating emotions appropriately and using independence "to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age." 20 C.F.R. § 416.926a(k)(1)(i), (ii). Preschoolers care for themselves by attempting to "take care of many of [their] physical needs" by themselves and "begin[ning] to understand how to

control behaviors that are not good for [them]." 20 C.F.R. § 416.926a(k)(2)(iii).

Chrisman asserts that the ALJ did not adequately explain why N.R.C.'s frequent toileting issues did not rise to the level of a "marked" limitation. We agree that the ALJ "would have done better to directly" address the issue by comparing N.R.C.'s behaviors to those of a typical four-year-old. *Thorlton*, 127 F.4th at 1082. But the "shortcoming does not require" reversal because the decision establishes that the ALJ considered the potty-training issue, *id.*, but was influenced by evidence that N.R.C. was "making 'good progress'" towards her goals and was "doing well with less accidents." Regardless, the ALJ found persuasive the medical determinations from the state agency doctors who found a "less than marked" limitation in caring for oneself—while noting explicitly that N.R.C. had potty training issues. In context, the ALJ's adequately supported her determination that N.R.C.'s toileting issues presented a "less than a marked" limitation in "caring for yourself."

Chrisman counters that agency doctors' opinions cannot be persuasive because they did not consider N.R.C.'s bowel or urinary issues. But the first state agency doctor specifically referenced N.R.C.'s potty-training issues. And on reconsideration, the second doctor reviewed records from N.R.C.'s pediatrician submitted in October 2021. These records detail the medical evaluation of N.R.C.'s issues with soiling and wetting herself, including that N.R.C. "voids on floor, pillows" and has "[n]o problem at daycare." There are no medical opinions in the record that contradict the agency doctors' opinions, just pieces of evidence that N.R.C.'s problems have been worse at

times. Therefore, the ALJ properly relied on the state agency medical opinions. *See* 20 C.F.R. § 416.913a(b)(1).

Chrisman also appears to assert that, as a rule, bowel and urinary issues like N.R.C.'s show a "marked" limitation in children, but her argument is unavailing. The nonprecedential cases she cites concern children much older than N.R.C. *See Washington v. Barnhart*, 41 Fed. App'x 52, 53 (9th Cir. 2002) (fifteen-year-old soiled self on daily basis); *A.H. ex rel. Williams v. Astrue*, No. 09 C 6981, 2011 WL 1935830, at *17 (N.D. Ill. May 18, 2011) (daily urinary incontinence from ages ten to twelve). Age is a specific factor that the ALJ must consider when determining functional equivalence. *See* 20 C.F.R. § 416.926a(b). Regardless, the regulations explicitly recognize that there is "a range of development and functioning," and that "not all children within an age category" may be able to do each activity in each category consistently. 20 C.F.R. § 416.926a(b)(1). Therefore, four-year-old N.R.C.'s potty-training issues alone do not establish a "marked" limitation in her ability to care for herself.

Because the ALJ adequately explained the basis of her decision, and that decision is supported by substantial evidence, we AFFIRM.